THE ECONOMY ELECTRIC COMPANY ET AL. v. THE AUTOMATIC ELECTRIC POWER AND LIGHT PLANT ET AL.

(Filed 8 June, 1923.)

**1. Process—Summons—Deceit—Fraud—Irregularities—Waiver.**

The law will not lend its sanction or support to an act, otherwise lawful, which is accomplished by unlawful means, and where the service of summons on defendant has been procured by plaintiff's fraud or deceit, the defendant may specially appear in apt time and show the fact; but his general appearance and plea to the merits of the action will be deemed a waiver of any irregularity in the service of the process.

**2. Same—Attachment—General Appearance—Pleas—Merits.**

The plaintiff made a partial payment in advance on five automatic lighting machines purchased from the nonresident defendant, had one of them shipped in advance which he upon examination found to be worthless and not as warranted, and to obtain jurisdiction in our State courts, caused the defendant to ship the other four, bill of lading attached to draft, paid the draft, attached the funds in a local bank in his action for damages, etc. Upon defendant's general appearance and the trial of the

case upon its merits:  *Held,* the defendant had waived his rights to have the court dismiss the action for alleged fraud or deceit in the procurement of service of summons on him.

3. **Intervener—Attachment—Title—Burden of Proof.**

The burden of proof is on the intervener in attachment to show his title to the property attached.

APPEAL by defendants and interpleader from *Daniels, J.,* at October Term, 1922, of NASH.

Civil action to recover damages for an alleged breach of contract.

On 2 September, 1919, the plaintiffs contracted for the purchase from defendant Automatic Light Company of five automatic lighting machines.  The total price to be paid for the five machines was in excess of $1,700.  The jury have found, upon plenary evidence, that the defendant's agent falsely and fraudulently represented the machines to be automatic in operation.  The proof is that, but for these false and fraudulent representations, plaintiffs would not have contracted to buy the machines.  Plaintiffs paid $568 in cash upon the five machines, under an agreement that one of the machines was to be sent promptly by express so as to enable plaintiffs to make exhibition of and to advertise it at the approaching agricultural fair.  The remaining four machines were to follow by freight.  The machine sent out by express arrived too late for demonstration at the fair, but was repeatedly tested and tried out by plaintiffs and found to be practically worthless.  Plaintiffs then called upon defendant light company for a cancellation of their contract and the return of their installment payment of $568.  Defendant, while expressing its willingness to withhold shipment of the last four machines, refused to pay back the $568, which had been paid by plaintiffs.

In the meantime, the four machines, which were to come by freight, were shipped "order notify," with drafts for the purchase money attached to bills of lading, which, with the drafts attached amounting to $1,198.44, were sent for collection to the Farmers and Merchants Bank of Rocky Mount.  At first the plaintiffs, seeking to get a cancellation of the contract and the repayment of their cash installment, refused to pay the drafts, or to take up the bills of lading, but finally plaintiffs did pay the drafts for the four machines, and before the Farmers and Merchants Bank could remit the money to the drawer of the drafts, attached the said sum of $1,198.44 in the bank's hands and sought to apply the same to the payment of the damages suffered on account of the false and fraudulent representations made to them in respect to the machines.  The defendant Automatic Light Company, through its counsel, made a general appearance, and the Ludington State Bank, the nonresident bank voluntarily came into court and, through its counsel, intervened, made a general appearance, took the funds upon execution of

satisfactory bond, and filed its formal affidavit, claiming that it had purchased the drafts and bills of lading in question from the Automatic Light Company for value, and without notice of any defect in the title.

The jury found, upon issues submitted, that the representations made by defendant's agent were false and fraudulent; that the intervening bank was not a bona fide holder of the drafts; that plaintiffs had not waived the fraudulent representations alleged in the complaint; and awarded the plaintiffs, as damages, the sum of $1,766.44, which is the aggregate of the amounts paid out, to wit, $568 and $1,198.44.

Judgment on the verdict, and by consent of plaintiffs, the five machines in question were ordered to be sold and proceeds derived therefrom credited on plaintiffs' judgment, and any excess paid to defendants as their interests may appear. Defendants appealed, assigning errors.

*Spruill & Spruill and J. W. Keel for plaintiffs.*
*Thorne & Thorne for defendants.*

STACY, J., after stating the case: At the close of plaintiffs' evidence, and again at the close of all the evidence, defendant Automatic Electric Power and Light Plant, and Ludington State Bank, intervener, moved for judgment as of nonsuit, and the refusal of the court to allow their motion is the ground of the first exception. In support of this exception, defendant and intervener contend that the plaintiffs have obtained jurisdiction of their property and thereby induced them to come into court by fraud or other improper means, and that the only adequate remedy which the law affords an aggrieved party in such a case is to set aside the process and dismiss the action. 7 R. C. L., 1040. It is alleged that the plaintiffs fraudulently and deceitfully persuaded the Automatic Electric Power and Light Plant to send the drafts in question with bills of lading attached, through the intervening bank, into this jurisdiction so that plaintiffs might pay them, or take them up, immediately levy an attachment against the proceeds of such collection in the hands of the collecting bank, and thereby force the defendants to litigate the matters in dispute in the courts of this State.

Where service of process is procured by fraud, that fact may be shown, and, if shown seasonably, the court will refuse to exercise its jurisdiction and turn the plaintiff out of court. The law will not lend its sanction or support to an act, otherwise lawful, which is accomplished by unlawful means. *Chubbuck v. Cleveland,* 37 Minn., 466 (*S. c.,* 5 Am. St. Rep., p. 864). Such a fraud is one affecting the court itself and the integrity of its process. *Larned v. Griffin,* 12 Fed. Rep., 590; *Gilbert v. Vanderpool,* 15 Johns (N. Y.), 242; 1 Wait's Practice, 562. The objection, strictly, is not that the court is without jurisdic-

tion, but that it ought not, by reason of the alleged fraud, to take or to hold jurisdiction of the action. *Wheelock v. Lee,* 74 N. Y., 495; *Higgins v. Beveridge,* 35 Minn., 285. Also, *Steele v. Bates,* 16 Am. Dec., 723, and note. The defendant may appear specially and object to the jurisdiction when the court will refuse to assume it, and will dismiss the action or award appropriate relief, as we have said, for the law will not lend its countenance or its aid to further an act, otherwise lawful, which is accomplished by unlawful and fraudulent means. *Townsend v. Smith,* 47 Wis., 623; 32 Am. Rep., 793; Bigelow on Fraud, 166, 171, and cases; *Ilsley v. Nichols,* 12 Pick., 270, 276; 22 Am. Dec., 425; *Sherman v. Gundlach,* 37 Minn., 118.

In the instant case, however, the Automatic Electric Power and Light Plant and the Ludington State Bank, intervener, have clearly and undoubtedly waived their right to dismiss the case for the alleged fraud of the plaintiffs by appearing herein without objection of any kind and actually pleading to the merits. The jurisdiction of the court has already been exercised and the case heard. It would be useless to restate the reasons for this result, as the question is fully treated and discussed, and the law in regard to it settled in the cases of *Motor Co. v. Reaves,* 184 N. C., 260, and *Scott v. Life Asso.,* 137 N. C., 516. See, also, *Hatcher v. Faison,* 142 N. C., 364; 32 Cyc., 527, and the following cases upon the question that a general appearance cures all defects and irregularities in the process: *Wheeler v. Cobb,* 75 N. C., 21; *Penniman v. Daniel,* 95 N. C., 341; *Roberts v. Allman,* 106 N. C., 391; *Moore v. R. R.,* 67 N. C., 209; *Grant v. Grant,* 159 N. C., 528; *Harris v. Bennett,* 160 N. C., 339.

In *Moore v. R. R., supra, Justice Rodman* said: "The defendant nevertheless appeared and answered in bar. The irregularity was thereby waived. If no summons at all had been issued, the filing of a complaint and answer would have constituted a cause in court."

His Honor was correct in holding that the burden was on the intervener to make good its claim and to show title to the property attached. *Sterling Mills v. Milling Co.,* 184 N. C., 461; *Mangum v. Grain Co.,* 184 N. C., 181, and cases there cited.

After a careful perusal of the record, we have found no material or reversible error presented by any exception, and this will be certified.

No error.